## BOWLES *v.* UNITED STATES (No. 1213).[1]

ARTISTIC ANTIQUITIES—EVIDENCE.

On entry all this merchandise was claimed as entitled to free entry. This claim was supported by an affidavit in which all the articles were not claimed to be free of duty, and the articles so omitted were withdrawn by counsel from consideration here. The evidence that the goods are artistic antiquities is too weak and confused to warrant the finding of the board that they are dutiable should be disturbed, based as this was on a thorough inspection of the goods by an examiner.

United States Court of Customs Appeals, November 11, 1913.

APPEAL from Board of United States General Appraisers, Abstract 32815 (T. D. 33578).

[Affirmed.]

*Brooks & Brooks* (*F. W. Brooks, jr.*, of counsel) for appellant.
*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The opinion of the Board of General Appraisers states that this case relates to " mugs, jugs, and other articles of decorated earthenware, brass fenders and fire brasses, mahogany table, and other articles of furniture, etc., so-called ' artistic antiquities.' "

Some of the goods were passed free about which there is no question, while others were correctly assessed under various appropriate paragraphs, unless the importer's claim that all are entitled to free entry as " artistic antiquities " under paragraph 717 of the tariff act of August 5, 1909, is sustained.

The board further observes in its opinion that—

The goods were not produced in court; neither have we any accurate or definite description of them from the testimony produced by the importer. He has contented himself with swearing to them *en bloc*. It is true the testimony of the importer is to the effect that these articles are both artistic and of the proper age. The finding of the examiner, however, seems to be based upon a thorough examination. Some of the goods embraced in the invoice were passed free. From the description in the invoice it is very doubtful whether a great portion of them would be considered artistic in any way; they seem to be fragments and pieces of furniture. Taking the whole record, we are unable to determine that the importer has maintained his case by a fair preponderance of the evidence. The protest is therefore overruled.

---

[1] Reported in T. D. 33885 (25 Treas. Dec., 467).

The merchandise was imported in 18 different cases. The Government claims, and the importer does not deny, that there were some 380 different articles contained in these cases. It was claimed by the importer before the board that each of these articles was entitled to free entry as an artistic antiquity. Upon the argument of the case here counsel for the importer, by written notice, disclaims as to many of these articles and claims only on such as are " specifically mentioned in the oath of the shipper attached to the invoice, which are articles of household furniture, including decanters."

This affidavit, as we understand it, refers to 14 only of the 18 cases. The material part of the affidavit is as follows:.

That the said articles were produced at the places named, in the years stated, and were acquired by me from various sources and on the dates and in the years named, and I further declare that the goods are over 100 years old and are generally antique.

This affidavit refers to the consular invoice. That invoice contains no information as to the time or place when and where nor the sources or persons from whom the merchandise was obtained; nor does it contain any information as to their antiquity. There is, however, in the files attached to this affidavit and to the consular invoice a written schedule referring to the merchandise. Therein is stated the names of the various persons from whom the merchandise, which was contained in cases Nos. 3, 4, 5, 6, 7, 9, 10, 11, 12, and 13, was purchased, the years varying from 1905 to 1910 in which the purchases were made, with statements as to date of production in forms as follows: " Georgian period, about 1800 "; " Sheraton period "; " Old Yorkshire chairs, about 1750 to 1780 "; " Date about 1790." As to cases Nos. 15, 16, 17, and 18, containing decanters, it is stated, " Purchased from sales all over Great Britain and all of Georgian period." No reference whatever is made in the written schedule to cases Nos. 1, 2, 8, and 14.

The affidavit does not in any manner disclose upon what affiant's opinion, if what we have quoted be his opinion, as to the dates of production of the merchandise is based, nor his knowledge as an expert or otherwise upon the subject of antiquities.

The owner's affidavit states that—

I have investigated the history and origin of said articles, and verily believe the same to have been produced more than 100 years prior to importation.

This affidavit appears to refer to all the merchandise contained in the 18 cases.

At the hearing before the board the importer's attention was called to his affidavit, and he was asked what investigation he had made into the origin and history of the different things therein mentioned. He said:

The man I bought them of is a very reputable dealer, that is all.

In the course of his examination he stated that he made a personal examination of each and every article covered by the invoice. The following then ensued, the interrogatories, except the one by Judge Waite, being propounded by importer's counsel:

Q. Will you state whether any or any part of it was over 100 years old, in your opinion?—A. Yes, sir; the goods that are marked on this invoice are old.

By Judge WAITE. Those that are marked "old" on the invoice are how old, in your judgment?

A. Over 100 years when they were imported.

Q. What do you mean by marked "old" on this invoice?—A. What was marked or entered as "old."

Q. You mean entered free of duty?—A. Yes; you will see some of them are marked "free."

Q. I notice at the side of this invoice there appears a pencil notation "free on oath." Is that what you mean by marked "old"?—A. Yes.

Q. And that notation applies to every one you entered free of duty?—A. Yes, sir.

Q. Does your testimony likewise apply to every one you entered free of duty?—A. Yes, sir.

Each of the three pages of the invoice shows at the right-hand side and near the top the words "free on oath," below which a pencil line on the right-hand margin extends to the bottom of the page. This might possibly be construed as limiting the quoted words to the first few items on each of the pages. If it were so understood, the effect of the importer's evidence would be to limit his claim as to page 1 substantially to jugs, mugs, and cruets; as to page 2 it would be limited to a wardrobe, some chairs, and table legs; and as to page 3 to some grates, but we are convinced it can not be so limited in view of the quoted evidence. The importer's counsel does not here so claim, and besides it was on entry claimed that all the merchandise was free. The record and files are construed, therefore, as showing that the notation "free on oath" relates to all the merchandise and that both counsel and witness so understood it at the hearing before the board.

In addition to the importer one other person, his employee, was called to testify in his behalf. He testified generally that he knew all the merchandise that was the subject of this shipment; had examined it so as to satisfy himself as to the quality of the goods. The following then ensued:

Q. Referring to these articles of household furniture and these decanters, table tops, mahogany, and rush seat chair, etc., that are here on this invoice, you saw them all in your place of business after they arrived?—A. Yes; from time to time I saw every one of them.

Q. What have you to say as to whether or not they were over 100 years old?—A. All those I saw were satisfactorily old, antique, over 100 years old.

Q. Have you any doubt about that?—A. No; I don't think I have; no.

In another connection he testified that it was a rather difficult matter to tell closely the age of an old piece of goods.

The importer and his witness both testified to many years of experience in dealing with antiques.

The files in the case clearly show, as stated by the board, that the finding of the examiner seems to be based upon a thorough examination of the merchandise.

The Government urges here that the character of the evidence which we have quoted, including the affidavits, coupled with the action of the importer's counsel in now withdrawing from consideration the articles not mentioned in the shipper's affidavit, makes against the weight to be given to the evidence of the importer himself.

We think this is true. It is a significant fact that after his attention was specifically directed thereto, as shown by the above-quoted evidence, the importer should testify positively that every article of the importation was an antique. Manifestly all were not so, as is now conceded, and we are at a loss to understand why the importer should have so asserted in his evidence or so have entered the merchandise. Importer's counsel ingeniously argued here that he must have been mistaken and could not have meant *all* the articles. The act of his counsel in withdrawing certain merchandise indicates there was a mistake, but if he was mistaken as to so material a part of the importation—namely, to four cases thereof—how can it be said he is correct as to the rest; and if not as to all the rest, as to what part thereof can it be said he is not mistaken?

Many of these articles, it appears by the notations on the invoice, were passed free as antiquities. Just what they were counsel have not undertaken to advise us, and we do not deem it our duty to analyze the files to ascertain what they were.

We think this case is one that especially invites and requires the application of the rule that, although the court will review the evidence and reverse the board in cases where its finding seems to be wholly unsupported by or against the weight of evidence, nevertheless it will not undertake to disturb its findings upon doubtful questions of fact which turn upon the intelligence and credibility of witnesses who have been produced before the board. Holbrook *v.* United States (1 Ct. Cust. Appls., 263; T. D. 31317).

No samples of the merchandise were produced before the board nor any photographic or other representations thereof. Neither of the witnesses gave any specific description of the articles nor mentioned any characteristics thereof upon which his opinion that they were artistic antiquities or works of art was based. Each simply gave it as his *ipse dixit* that it was so.

As to four cases, as we have already seen, the seller, who was the shipper, made no such claim, and now in this court the importer does not, notwithstanding he had so positively sworn before the board that all were entitled to free entry.

We are not surprised that the Board of General Appraisers rejected his claim, and its judgment is *affirmed*.